UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA OYSTERMEN ASSOCIATION, INC.<br><br>V.<br><br>HILCORP ENERGY COMPANY | CIVIL ACTION NO.<br><br>16-10171<br><br>SECTION "N" (3) |

## ORDER & REASONS

Before the Court is the "Rule 12(b)(1) or 12(b)(6) Motion to Dismiss or, in the Alternative, Motion to Stay Proceeding Pending Regulatory Investigation" (Rec. Doc. 10), filed by the defendant, Hilcorp Energy Company. The plaintiff, Louisiana Oysterman Association, Inc. has filed a memorandum in opposition (Rec. Doc. 13), to which Hilcorp has replied (Rec. Doc. 16). Now, having considered the submissions of the parties, the record, and applicable law, the Court denies the Motion to Dismiss, finding that, as alleged, Hilcorp Energy Company remains in intermittent violation of the Clean Water Act.

**I.     BACKGROUND**

Louisiana Oysterman Association, Inc. (the "Association") brings this action against Hilcorp Energy Company ("Hilcorp") under the citizen suit provision of the Clean Water Act, Section 505(a), as codified, 33 U.S.C. § 1365(a), for purported dredging without a permit. The Association accuses Hilcorp of unpermitted dredging in the vicinity of its E. Cockrell Jr. 154 well, which is located near the shore of Lake Grand Ecaille in Plaquemines Parish, on the eastern side of the Barataria Basin. According to the Association, the dredging occurred during a one-month long project that began on January 15, 2016, and involved the deployment of a large drilling barge named the Barge St. Elaine and several tugboats. (*Id.* at ¶¶ 31, 34). Hilcorp used the tugboats to

move the drilling barge, which drew approximately eight feet of water, to the well location for sidetrack drilling. (*Id.* at ¶¶ 32, 34). In water shallower than the barge's draft, the Association believes that the tugs dragged and pushed the barge over the waterbottom and resorted to "propwashing,"[1] a process whereby the large propeller blades of a tug are used to carve a channel through the waterbottom. (*Id.* at ¶¶ 22, 41). Although Hilcorp denies the allegations, it appears undisputed that Hilcorp did not have a "Section 404 permit" to dredge.

On February 16, 2016, the Association mailed Hilcorp and federal and state officials a 60-day notice-of-intent-to-sue letter, setting forth the charge that Hilcorp engaged in unpermitted dredging in violation of the Clean Water Act. Unsatisfied by the response of the government, and after the expiration of the statutorily-required notice period, the Association commenced the instant suit, asking the court to issue an injunction to prevent Hilcorp from dredging without obtaining permit approval, order Hilcorp to restore damage it caused, and impose per-day civil penalties on Hilcorp for its violations. In response, Hilcorp argues that the violations alleged are wholly past, such that the court lacks subject-matter jurisdiction under the Act. Hilcorp moves for dismissal or, in the alternative, a 90-day stay of the judicial proceedings while the Louisiana Department of Natural Resources concludes an investigation into the events at issue.

## II.   STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action upon a finding by the court that it does not have subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subsection (6) of the same rule provides for dismissal based on a party's failure to state

---

[1] According to the Association, "[p]ropwashing alters the waterbottom depth, accelerates coastal erosion, and denies the beneficial use of dredged soil for coastal restoration." (Rec. Doc. 13 at p. 3). In addition, propwashing "turns hard-bottom oyster habitats to soft mud, degrading the quality of waterbottom needed for reef construction, and can destroy existing oysters and oyster reefs . . . by covering them with a choking layer of displaced sediment." (*Id.*).

2

a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions," including one brought under Rule 12(b)(6), "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("Ordinarily, where both [Rule 12(b)(1) and 12(b)(6)] grounds for dismissal apply, the court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim under Fed. R. Civ. P. 12(b)(6).")). This approach ensures that a court without jurisdiction is prevented "from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

The court must grant a motion to dismiss for lack of subject matter jurisdiction when it does not have the requisite statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir.1996)). As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of demonstrating that jurisdiction exists. *Dow v. Agrosciences, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003).

### III.    LAW AND ANALYSIS

Over four decades ago, in 1972, Congress enacted the Clean Water Act, 33 U.S.C. §1251 *et seq.*, "to restore and maintain the chemical, physical, and biological integrity of the Nation's water." § 1251(a). To achieve this objective, the Act makes unlawful the discharge of pollutants into navigable waters, except as authorized under certain provisions of Title 33, including the permitting section for dredged or fill material.[2] *See* 33 U.S.C. §§ 1311(a), 1344. Citizens may

---

[2] Pollutants are "discharged" when added "to navigable waters from a point source." 33 U.S.C. § 1362(12). As defined, the term "pollutant" includes dredged spoil, or "material that is excavated

3

enforce the Act, in the absence of federal or state action, by bringing suit on their own behalf against polluters "alleged *to be in violation* of (A) an effluent standard or limitation under [the Act] or (B) an order issued by the Administrator or State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1) (emphasis added).

The Supreme Court of the United States has interpreted the "to be in violation" language of § 1365 to require that citizen-plaintiffs "allege [in good-faith] a state of continuous or intermittent violation–that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987). As a corollary, the federal courts do not have subject matter jurisdiction to consider "citizen suits for wholly past violations." *Id.* at 64. With these rules in mind, it is important to note that at the pleading state of litigation, *Gwaltney* merely requires that a continuous or intermittent violation be *alleged* in good faith – not proven. *See id* at 65-66. In other words, good faith is the only showing required for jurisdiction to attach.[3] *Id.* at 65. Factual challenges to allegations need await summary judgment. *See Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) ("The defendant can challenge the factual basis for [an] allegation by moving for summary judgment.") (citing *Gwantley*, 484 U.S. at 66).

Of additional importance is that the *Gwaltney* test is disjunctive, meaning federal courts have jurisdiction to review citizen suits that allege either continuous or intermittent violations. *See Carr*, 931 F. 2d at 1062. "A continuous violation applies where the conduct is ongoing, rather than

---

or dredged from waters of the United States," 33 C.F.R. § 323.2(c), and a vessel is a "point source." 33 U.S.C. § 1362(14).

[3] As the Supreme Court explained in *Gwaltney*, defendants are adequately protected from frivolous litigation by Rule 11 of the Federal Rules of Civil Procedure, "which requires pleadings to be based on a good-faith belief, formed after reasonable inquiry, that they are well grounded in fact." 484 U.S. 49, 65 (1987) (internal quotation omitted).

a single event." *United States v. Rutherford Oil Corp.*, 756 F. Supp. 2d 782, 790 (5th Cir. 2010) (quoting *Interamericas Investments, Ltd. v. Bd. of Governors of the Fed. Reserve Sys.*, 111 F.3d 376, 382 (5th Cir. 1997) (internal quotation marks omitted). In *Rutherford*, the Fifth Circuit considered unauthorized propwashing, but in the statute-of-limitations context. *See* 756 F. Supp. 2d at 785-86. Nonetheless, the *Rutherford* court examined the same statutory text of § 1311(a) now at issue, and held that a CWA violation ceases "once the violator stops adding a pollutant in violation of a permit" (or without a permit). *Id.* at 791. The court explained that § 1311(a) makes unlawful the discrete act of adding pollutants to navigable waters, not the result of that act. *See id.* "What remains," it concluded, "are the effects of the violation, but absent a continuing obligation that is itself violated, the effects are not themselves violations." *Id.*

An intermittent violation, on the other hand, simply requires "a reasonable likelihood that a past polluter will continue to pollute in the future. *Gwaltney*, 484 U.S. at 57. "Although no private action lies for wholly past violations, evidence of past violations can help prove a continuing violation as well as establish the likelihood of future violations." *Center for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789, 797 (C.D.Cal. 2006) (citing *Gwaltney*, 484 U.S. at 58-59).

The instant case presents allegations of continuous and intermittent violations. According to the Association, Hilcorp is in a state of continuous violation because it has not remedied the purported damage, and it is in a state of intermittent violation because the unpermitted dredging is likely to resume when vessels access the well. (Rec. Doc. 1 at ¶¶ 7, 65). These allegations do not appear to be made lightly. They are supported by recorded water depths, video and photographic evidence, an eye-witness account, and knowledge of Hilcorp's past environmental transgressions. (Rec. Doc. 1 at ¶¶ 38-58). For purposes of this motion, if one assumes the truth of the accusations,

which the Court must do at this stage, it seems reasonably likely that Hilcorp will re-engage in the complained-of conduct when returning to the well. Accordingly, the Court finds that the allegations are made in good faith, such that is has subject matter jurisdiction.

Although the issue is largely unaddressed by the parties' briefs, the Court views Hilcorp's Rule 12(b)(6) challenge as a matter distinct from the challenge to subject-matter jurisdiction. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). For the reasons discussed *supra*, the Court finds that the Association has stated a plausible claim for relief based on intermittent violations. However, according to *Rutherford*, for a single violation to persist after a polluter stops adding pollutant to navigable waters, there must be a continuing obligation that is itself violated. *See* 756 F. Supp. 2d at 791. Here, the Association has not identified an authoritative source for its position that Hilcorp has an ongoing obligation to remedy damage caused in January and February of 2016. Instead, the Association cites a line of traditional dredge and fill cases, issued prior to *Rutherford*, that are not binding on this Court. Because the Association has not identified an ongoing obligation, the Court finds that the Association has failed to state a claim for relief based on a continuing violation. Nevertheless, the case may proceed, but on account of intermittent violations only.

### IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Rule 12(b)(1) Motion is **DENIED** as the Court finds the allegations of continuing and intermittent violations are made in good faith.

**IT IS FURTHER ORDERED** that the Rule 12(b)(6) Motion is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted to the extent that the Association claims an ongoing violation, and it is denied to the extent the Association claims intermittent violations.

**IT IS FINALLY ORDERED** that Hilcorp's request to stay the litigation for 90 days is **DENIED**, as a stay would appear to be unprecedented, and unnecessary under the circumstances.

New Orleans, Louisiana, this <u>30th</u> day of <u>January</u> 2017.

                                                            **KURT D. ENGELHARDT**
                                                            **United States District Judge**