UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA OYSTERMEN ASSOCIATION, INC., Plaintiff, | * | CIVIL ACTION NO.: 2:16-cv-10171 |
| VERSUS | * | SECTION N |
| HILCORP ENERGY COMPANY, Defendant. | * | MAGISTRATE: DANIEL E. KNOWLES, III |

* * * * * * * * * * * * * * * * * * * * * * * * *

# CONSENT JUDGMENT

## JURISDICTION

**1.** This Court has jurisdiction over the subject matter herein and the parties to this action pursuant to 33 U.S.C. § 1365 and 28 U.S.C. §§ 1331 and 1355.

## VENUE

**2.** Venue is proper in the United States District Court for the Eastern District of Louisiana, pursuant to 33 U.S.C. § 1365, and 28 U.S.C. §§ 1391(b) and 1395(a), because it is the judicial district in which the alleged violations occurred.

## OBJECTIVES

**3.** It is the express purpose of the Parties to further the objectives set forth in section 101 of the Clean Water Act ("CWA"), 33 U.S.C. § 1251, and to resolve LOA's claims for civil penalties, injunctive relief, and for attorneys' fees and costs, as alleged in the Complaint, in a manner consistent with the public interest, the Clean Water Act, and the regulations promulgated thereunder.

**STIPULATIONS**

**4.** Plaintiff Louisiana Oystermen Association, Inc. ("LOA") is a Louisiana non-profit corporation based in Plaquemines Parish, Louisiana, whose mission is to protect the oyster industry, fishing communities, and the environment upon which they depend. The Parties stipulate that LOA members live, work and own oyster leases in the areas at issue in the suit, and these members can demonstrate the facts necessary for standing to bring this suit. The Parties further stipulate that facts can be presented demonstrating that venue is proper in this Court, and that this Court has proper jurisdiction over this matter.

**5.** Defendant Hilcorp Energy Company ("Hilcorp") is a Texas corporation licensed to do and doing business in Louisiana.

**6.** For purposes of this Consent Judgment, LOA and Hilcorp collectively shall be referred to as the "Parties".

**7.** In January and February 2016, Hilcorp conducted a recompletion project on a drilling well, E. Cockrell, Jr. 154, located in the Lake Washington Oil & Gas Field, near the shore of Lake Grand Ecaille in Plaquemines Parish, Louisiana ("Recompletion Project").

**8.** On June 14, 2016, after proper notice under the terms of the Clean Water Act, LOA filed a Complaint for Declaratory Relief, Injunctive Relief, and Civil Penalties against Hilcorp in the United States District Court for the Eastern District of Louisiana, Civil Action No. 2:16-cv-10171, as authorized by 33 U.S.C.A. § 1365, seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs ("Complaint").

**9.** In its Complaint, the LOA alleged that during the Recompletion Project, Hilcorp and vessels operated by and/or for Hilcorp dredged and discharged dredged materials into waters

of the United States without a permit, in violation of Section 404 of the Clean Water Act ("Action").

**10.** LOA alleged that Hilcorp's activities in the Lake Washington Oil & Gas Field made it likely that the conduct complained of was to recur, thus conferring this Court with jurisdiction under the CWA to preside over this case and to enter this Consent Judgment.

**11.** The Parties agree that it is in their mutual interest to enter into a Consent Judgment that sets forth the terms and conditions appropriate to resolving this lawsuit.

**12.** This Consent Judgment was submitted to the United States Department of Justice and the Environmental Protection Agency for the 45-day statutory review period on ___ day of February, 2018, pursuant to 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5.

**13.** At the time the Consent Judgment is submitted for approval to the United States District Court, LOA shall request a dismissal of the Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), subject to Hilcorp's compliance with the terms of this Consent Judgment and the Court's continued jurisdiction for the enforcement of this Agreement as provided herein.

## OBLIGATIONS OF DEFENDANT

**14.** **Compliance with Clean Water Act.** Throughout the term of this Consent Judgment, Hilcorp agrees to comply with the terms of the Clean Water Act, Louisiana's State and Local Coastal Resource Management Act, and the regulations and guidelines thereunder, as those laws and regulations relate to the conduct alleged in the Complaint.

**15.** **Compliance with General Permitting.** Hilcorp agrees to do the following when reasonably possible: minimize dredging, use sediment curtains, navigate within pre-established

shipping channels, use rigs and vessels of appropriate draft, and make beneficial use of spoil material for Hilcorp projects in the Lake Washington Oil & Gas Field.

**16. Compliance and Policies & Procedures.** Hilcorp agrees to maintain in its contractor guidelines mandatory requirements that contractors comply with Section 404 of the Clean Water Act and Louisiana's Coastal Use Program.

**17. Non-Retaliation.** Hilcorp agrees not to disparage or discriminate against any person or entity as a result of his or her affiliation with LOA, for rendering professional services, assistance, or expertise to LOA, for expressing an opinion regarding Hilcorp's conduct made subject of this suit, or for participating in this lawsuit or LOA's investigation leading to this lawsuit.

**18. Monitoring.** Hilcorp agrees to concurrently provide LOA with an electronic copy of each document Hilcorp submits as part of a joint permit application for any project in the Lake Washington Oil & Gas Field. In its joint permit application for any project in the Lake Washington Oil & Gas Field, Hilcorp will make a reasonable effort to identify the deepest draft rig that it expects to use.

**19. Supplemental Environmental Project ("SEP")**

**i. SEP Description.** LOA will establish a "Fishermen's Education and Resiliency Program" ("FERP"), operated by a SEP Implementer, to increase the resiliency of coastal fishermen and the sustainability of the communities in which they live, and to compensate for the destruction of suitable oyster habitat, water quality degradation, and rapidly changing salinity regimes.

**ii. SEP Payments.** Hilcorp will contribute a total of $540,000 to fund the FERP, divided into three payments. The first payment of $350,000 will be paid within 30

days of the signing of this judgment. Thereafter, Hilcorp will pay $95,000 within 30 days of the beginning of the following two calendar years (2019 – 2020, inclusive). Funds will be paid into a bank account established by the SEP Implementer solely for use for the FERP, maintained and controlled by the SEP Implementer. The LOA agrees to provide to Hilcorp copies of any industry reports or data that the FERP generates related to its oyster research, if any such reports or data is generated.

iii. **FERP Farm Space.** If FERP desires to use public water-bottoms that are leased by Venice Oyster Company ("Venice") and Cocodrie Oyster Company ("Cocodrie") as of the signing of this judgment, and such leases are both available for lease and suitable for FERP purposes, Hilcorp will sublease such leases to FERP on the same terms and conditions Venice and/or Cocodrie subleases to other sub-lessees, except that Venice and Cocodrie will not charge FERP for such subleases. Hilcorp will also provide its consent to regulators to enable the permitting of such activities if regulators require Hilcorp's consent and the permitted activities do not violate any laws or otherwise interfere with Hilcorp operations. This provision shall be valid and enforceable for a period of three (3) years from the signing of this judgment.

iv. **FERP Certifications.** Hilcorp certifies that, other than as required by this Consent Judgment, Hilcorp is not required by any federal, state or local law or regulation, or by injunction to perform this FERP; nor is Hilcorp currently required by any agreement or grant to perform the FERP; nor has Hilcorp received, or is presently negotiating to receive, credit in any other enforcement action for implementing this FERP; nor will Hilcorp realize profit attributable to or associated with this FERP, or receive any

reimbursement for any portion of the FERP from any other person. LOA certifies that it will not receive any of the FERP funding, either directly or indirectly.

**20. Mitigation.** Hilcorp agrees to pay LOA $95,000 within 90 days of the signing of this judgment, which shall be used by LOA to monitor compliance with this Agreement and for the purchase of suitable cultch material, which LOA will place on waterbottom in or near the Lake Washington Oil & Gas Field.

**21. Attorneys' Fees and Costs.** Hilcorp agrees to pay $245,000 to LOA for its reasonable attorneys' fees, and $40,000 for its reasonable expert fees and all costs, incurred as a result of investigating the activity complained of in LOA's Complaint, bringing this lawsuit, and negotiating a resolution in the public interest, within 90 days of the signing of this judgment.

**22. Binding Effect.** The obligations set forth in paragraphs 14 – 21 shall be binding upon Hilcorp Energy Company and Hilcorp's past, present, or future parents, related, associated, affiliated, and interrelated and subsidiary companies, and their successors and assigns. Defendant further agrees to give written notice of the binding nature of this Consent Judgment to any successors in interest prior to assigning or transferring of Hilcorp's interest in oil and gas exploration and production in the Lake Washington Oil & Gas Field in Plaquemines Parish, Louisiana, and to provide a copy of this Consent Judgment to any such successor in interest at the time of such transfer. These obligations shall remain in effect from the date of the signing of this judgment to December 31, 2022.

**OBLIGATIONS OF PLAINTIFF**

**23. Confidentiality.**

i. LOA, which includes its predecessors, successors, directors, officers, heirs, and assigns, ("LOA Group") agrees not to encourage or assist any future legal action, either directly

or through a third party, agent, or attorney working on its behalf, against Hilcorp Released Parties (as defined in Paragraph 25), based on the violations of the Clean Water Act released herein.

**ii.** Any and all documents produced to LOA in this lawsuit by Hilcorp, any member of Hilcorp Released Parties, or by any non-party pursuant to subpoena, including Hilcorp's vendors and contractors, shall be treated as confidential by LOA and its counsel, and shall not be provided to a third party, shown to any member of the LOA who was not an officer or director of the LOA at the time the Complaint was filed, or otherwise except by Order, unless a document is also contained in a public record or has otherwise been made public by the party who provided LOA with the document.

**iii.** Any and all information that is contained in a document made subject to subparagraph (ii) shall be treated as confidential by LOA and its counsel, and shall not be communicated to a third party or to any member of the LOA who was not an officer or director of the LOA at the time the Complaint was filed, except by Order, unless such information is also contained in a public record or is otherwise publicly available.

**iv.** In the event that the Court determines that LOA Group, either directly or through a third party, agent, or attorney working on its behalf, has knowingly breached this provision after the signing of this judgment, pursuant to the procedures set forth in Paragraph 29 ("Breach"), LOA shall be liable for the repayment of all "Mitigation" amounts paid pursuant to Paragraph 20 ("Mitigation"), and Hilcorp's obligation to make any payments toward the FERP pursuant to Paragraph 19(ii) ("SEP Payments") that have not been made at the time LOA Group breached this provision of the Agreement shall be extinguished.

**24. Non-disparagement.** Hilcorp, including its past, present, or future parents, related, affiliated, interrelated, and subsidiary companies ("Hilcorp Group"), LOA Group, and counsel in

this action shall not disparage one another in any statement or press release that may issue concerning this settlement.

**MUTUAL WAIVER AND RELEASE OF CLAIMS**

**25. LOA's Waiver and Release.**

(a) Upon Court approval and entry of this Consent Judgment, LOA Group irrevocably and unconditionally fully and finally releases and forever discharges Hilcorp and Hilcorp's past, present, or future parents, related, associated, affiliated, interrelated and subsidiary companies, and its and their entities, servants, divisions, and its and their predecessors, successors, assigns, heirs, shareholders, incorporators, officers, executive officers, receivers, partners, directors, employees, attorneys, indemnitees, agents, working interest owners, lessees, contractors and subcontractors of any tier, joint interest owners, invitees, attorneys, consultants, and any other representatives ("Hilcorp Released Parties") from and waives any and all liability, claims, demands, damages, costs, fees (including expert and attorney's fees), fines, liens, rights of action, and causes of action of whatever kind or nature, in law, equity, or otherwise that arise from the Clean Water Act or under the citizen suit provision of another state or federal environmental statute, related to Hilcorp's conduct in any location and at any time prior to the date of the signing of this judgment, which is intended to include – and for which this Consent Judgment incorporates additional consideration – any other potential CWA claim arising from other projects performed by Hilcorp Released Parties in and around Louisiana, including Lake Washington and other areas in Plaquemines Parish, that may have resulted in potential violations of the CWA since January 1, 2013.

**26. Hilcorp's Waiver and Release.** Hilcorp, on its own behalf and on behalf of those Hilcorp Released Parties under its control, releases LOA Group from, and waives, all claims

which arise from or pertain to this lawsuit, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related tothis lawsuit.

**ENFORCEMENT OF CONSENT JUDGMENT AND DISPUTE RESOLUTION**

27. **Continuing Jurisdiction.** This Court shall retain jurisdiction over the Action for the limited purposes of enforcement of the terms of this Consent Judgment. Any request for attorneys' fees and costs in the event of a request for enforcement will be determined pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and the case law interpreting same.

28. **Dispute Resolution Process.** If a dispute under this Consent Judgment arises, or either Party believes that a breach of this Consent Judgment has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification of a request for a meeting to determine whether a violation has occurred, and to develop a mutually agreed-upon plan, if possible, to resolve the dispute, which shall include implementation dates. If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, either Party shall be entitled to all rights and remedies under the law, including filing a motion to enforce this Consent Judgment and/or a Motion for Contempt.

29. **Breach.** The parties stipulate that Hilcorp's agreement to comply with Paragraphs 14 - 22 of this Consent Judgment, including that Hilcorp will "comply with the terms of the Clean Water Act," and LOA's agreement to comply with Paragraphs 23 – 24, form material consideration underpinning the parties' agreement to enter into this Consent Judgment. If either party has reason to believe that the other party has violated terms of this Consent Judgment, before filing a motion to enforce this Consent Judgment, the potential movant must first provide written notice to the

other party about the alleged violation, and give the other party a reasonable opportunity to cure the violation, if possible. Nothing herein shall be interpreted to constrain LOA's ability to file a new citizen suit against Hilcorp for any conduct that takes place after the signing of this judgment.

**30. Force Majeure.** No party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure" event. A Force Majeure event is an event arising from causes beyond the control of a party, which delays or prevents the performance of an obligation under this Consent Judgment, despite that party's best efforts to fulfill the obligation. The requirement to exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event, and best efforts to address the effects of any potential Force Majeure event (1) as it is occurring and (2) following the potential Force Majeure event, such that delay is minimized to the greatest extent possible. Force Majeure does not include a failure to perform caused by negligence, inadequate funding, facility planning, pre-project surveying, unanticipated or increased costs, or a failure to achieve compliance with the Clean Water Act.

## MISCELLANEOUS PROVISIONS

**31. No Admission.** The Parties enter into this Consent Judgment for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Judgment shall be construed as, and Hilcorp expressly does not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Judgment constitute or be construed as an admission by Hilcorp of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Judgment.

32. **Counterparts.** This Consent Judgment may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. An executed copy of this Consent Judgment shall be valid as an original.

33. **Severability.** In the event that any one of the provisions of this Consent Judgment is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

34. **Construction.** This Consent Judgment shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it. The language in all parts of this Consent Judgment, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

35. **Choice of Law.** This Consent Judgment shall be construed pursuant to Louisiana law, without regard to conflict of law principles.

36. **Authority to Enter Consent Judgment.** The undersigned are authorized to execute this Consent Judgment on behalf of their respective parties and have read, understood, and agreed to be bound by all of the terms and conditions of this Consent Judgment.

37. **Entire Agreement.** All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Judgment are contained herein. This Consent Judgment and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any right or remedies under or by reason of this Consent Judgment, unless otherwise expressly provided therein.

38. **Notices.** Any notice or delivery of documents provided for by this Consent Judgment, or related thereto, shall be hand-delivered or sent by U.S. Mail or commercial delivery

service (FedEx or UPS), postage prepaid, to the addresses listed below, unless delivery is required in electronic format, and then by email transmission to the email addresses listed below:

Byron Encalade
Louisiana Oystermen Association
140 Espy Lane
Pointe a la Hache, Louisiana 70083
byronencalade@yahoo.com

With copies sent to:
Joel Waltzer
Waltzer Wiygul & Garside LLC
1000 Behrman Highway
Gretna, LA 70056
joel@wwglaw.com

Any notices or documents required or provided for by this Consent Judgment or related thereto that are to be provided to Hilcorp pursuant to this Consent Judgment shall be hand-delivered, sent by U.S. Mail, or sent by commercial delivery service (FedEx or UPS), postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

Rachel Rogers
Hilcorp Energy Company
1111 Travis Street
Houston, Texas 77002
Tel: (713) 289-2716
E-mail: rrogers@hilcorp.com

With copies sent to:
Craig Isenberg
Barrasso Usdin Kupperman Freeman & Sarver, LLC
909 Poydras Street
24th Floor
New Orleans, LA 70112
Tel: (504) 589-9700
E-mail: cisenberg@barrassousdin.com

Each party shall promptly notify the other of any change in the above-listed contact information.

39. **Signatures.** Signatures of the parties transmitted by facsimile or email shall be deemed binding.

40. **Amendments.** This Consent Judgment may be amended or modified only by a writing signed by the Parties' authorized representatives, and thereafter upon court approval.

41. **Continued Effort.** If for any reason the Court should decline to approve this Consent Judgment in the form presented, the Parties shall use their best efforts to work together to modify the Consent Judgment within thirty (30) days so that it is acceptable to the Court. If the Parties are unable to modify this Consent Judgment in a mutually acceptable manner, this Consent Judgment shall become null and void.

The Parties hereto enter into this Consent Judgment and respectfully submit it to the Court for approval and entry as an Order and final Judgment.

Dated: 3/16/2018

Louisiana Oystermen Association, Inc.

By: [signature]

Dated: ______________

Hilcorp Energy Company

By: ______________________________

**So Ordered this** 13 **day of** July **, 20**18

[signature]

NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT

39. **Signatures.** Signatures of the parties transmitted by facsimile or email shall be deemed binding.

40. **Amendments.** This Consent Judgment may be amended or modified only by a writing signed by the Parties' authorized representatives, and thereafter upon court approval.

41. **Continued Effort.** If for any reason the Court should decline to approve this Consent Judgment in the form presented, the Parties shall use their best efforts to work together to modify the Consent Judgment within thirty (30) days so that it is acceptable to the Court. If the Parties are unable to modify this Consent Judgment in a mutually acceptable manner, this Consent Judgment shall become null and void.

The Parties hereto enter into this Consent Judgment and respectfully submit it to the Court for approval and entry as an Order and final Judgment.

Dated: ________________

Louisiana Oystermen Association, Inc.

By: ______________________________

Dated: 4/10/18

Hilcorp Energy Company

By: ______________________________

**So Ordered this** 13 **day of** July **, 20**18

______________________________
NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT